UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT F. ICEBERG,

              Plaintiff,

    v.

LAURIE OLSON et al.,

              Defendants.

CASE NO. 2:25-cv-00422-LK

ORDER GRANTING MOTION TO DISMISS

      This matter comes before the Court on Defendants' Motion to Dismiss. Dkt. No. 9. Defendants have filed their motion under Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff Scott Iceberg's state law torts claims must be dismissed because he did not comply with Washington's statutory pre-suit notice requirements, and his Section 1983 claim is impermissibly vague and precluded by collateral estoppel. *Id.* at 7. For the reasons set forth below, the Court grants the motion.

## I.    BACKGROUND

### A.    When Mr. Iceberg Does Not Receive the Housing He Sought, He Responds with Abusive Language, and His Housing Voucher is Terminated

This matter arises out of Mr. Iceberg's dispute with the Housing Authority of Snohomish County ("HASCO") over his public housing voucher. Mr. Iceberg contends that on January 21, 2025, he requested to move into Ebey Arms, a HASCO-owned property, but "the Ebey Arms apartments failed to consider [his] reasonable accommodation requests regarding his application and tenancy." Dkt. No. 1-2 at 5. In his opinion, "transferring his voucher" and granting him "tenancy at the Ebey Arms" were reasonable accommodations for his disabilities. *Id.* at 6. Although he "requested numerous accommodations, and informed HASCO that his disability was severely aggravated due to the stress of moving," his requests were ignored. *Id.* at 5.

He also contends that on January 22, 2025, Defendant Jane Doe "sent Plaintiff an email threatening to terminate his voucher, and placing time, place, and manner restrictions on Plaintiff's protected activity." *Id.* at 7. He appears to be referring to the email attached to his amended complaint, in which an unidentified HASCO employee recounts "the many communications" Mr. Iceberg had sent to HASCO employees "over the last 24 hours" in which he "use[d] profanity, threaten[ed] legal action, sent a link to a song with lyrics about burning down a house with gasoline, and threaten[ed] to commit suicide inside [his] apartment" if evicted. *Id.* at 15.[1] The email goes on to state that the behavior was "completely inappropriate" and in violation of a condition of his voucher eligibility to "refrain from engaging in or threatening any abusive or violent behavior or language toward HASCO staff." *Id.* The email also informed Mr. Iceberg that

---

[1] On a 12(b)(6) motion to dismiss, the Court may "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008) (quoting *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007)). The Court thus considers the documents Mr. Iceberg attached to his amended complaint. Dkt. No. 1-2 at 14–18.

ORDER GRANTING MOTION TO DISMISS - 2

"[f]urther behavior of this nature may result in adverse actions such as termination of your voucher, or anti-harassment orders to protect the staff and board members who receive your abusive communications." *Id.*

On January 23, 2025, Mr. Iceberg emailed HASCO stating that he had filed a raft of legal documents, *id.* at 16, and on January 26, he emailed requesting "reasonable accommodation that you not retaliate against me, not terminate my voucher, and not cause me to become homeless, because, due to disability, the stress of such causes me to become suicidal," *id.* at 16–17. His email concluded, "I think you are all corrupt trash, and I am certain I can prove that Mr. Distelhorst is a pedophile. He's about to get countersued." *Id.* at 17. Mr. Distelhorst is "a Commissioner on the HASCO board." *Id.* at 3.

The next day, on January 27, 2025, HASCO sent Mr. Iceberg a letter notifying him that it was terminating his Section 8, Housing Choice Voucher assistance effective March 31, 2025. *Id.* at 18. HASCO explained that he "violated the family obligations for participation in the program, which prohibits abusive and violent behavior," because "[a] family member has engaged in or threatened violent or abusive behavior toward HASCO personnel." *Id.*

**B.    State Court Litigation Ensues**

Meanwhile, on January 24, 2025, Mr. Distelhorst filed for a temporary anti-harassment petition against Mr. Iceberg. Dkt. No. 11-3 at 2–36. Among other things, Mr. Distelhorst stated that on January 21, 2025, Mr. Iceberg sent an email to his personal email address stating that Mr. Iceberg would be homeless soon due to HASCO policies and threatening to camp out on the sidewalk outside Mr. Distelhorst's house and harass his neighbors about what a "piece of shit" Mr. Distelhorst is. *Id.* at 11; *see also id.* at 28 (message from Mr. Iceberg stating that he is sending a message to Mr. Distelhorst's neighbors alleging that he "touched a couple kid inappropriate[ly] in the neighborhood"). On January 27, 2025, a Snohomish County Superior Court Commissioner

entered an anti-harassment order. Dkt. No. 11-4 at 2.[2] The order prohibited Mr. Iceberg from harming, contacting, or stalking Mr. Distelhorst and required him to stay away from Mr. Distelhorst and his residence, vehicle, and workplace. *Id.* at 5; *Distelhorst v. Iceberg*, Snohomish Cnty. Superior Ct. No. 25-2-00779-31 (Jan. 27, 2025).

On the same day, Mr. Iceberg filed an "Anti-Slapp RCW 4.105.030 Motion for Expedited Relief" alleging that Mr. Distelhorst filed the anti-harassment petition to retaliate against him for protected speech and seeking damages and dismissal of the petition. Dkt. No. 10-5 at 2, 5. Mr. Iceberg alleged that Mr. Distelhorst's filing of the petition was "substantially motivated by Respondent Scott Iceberg's protected activity under the First Amendment, RCW 49.60, and RCW 59.18.255." *Id.* at 2. The Commissioner denied Mr. Distelhorst's request for a permanent protection order, and Mr. Distelhorst filed a motion for revision. Dkt. No. 10-6. On March 5, 2025, a Snohomish County Superior Court Judge entered an order granting the motion for revision, imposed the anti-harassment order, and found, "The Petition at issue presented a knowing and willful course of conduct directed at [Mr. Distelhorst] that is not protected speech and is designed to harass, intimidate, instill fear, and get [Mr. Distelhorst] to take action that would be beneficial to [Mr. Iceberg]." Dkt. No. 10-7 at 2; *see also* Dkt. No. 11-8.

On February 28, 2025, another Snohomish County Superior Court Judge entered an order denying Mr. Iceberg's motion for expedited relief and wrote that the "conduct complained of in [Mr. Distelhorst's] Petition for protective order . . . includes defamatory and harassing speech that is not protected speech." Dkt. No. 10-9 at 2.

---

[2] Courts routinely take judicial notice of public records, court filings and orders, and dockets in other cases. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Mayhoney v. Holder*, 62 F. Supp. 3d 1215, 1219 (W.D. Wash. 2014). Although the Court takes judicial notice of the existence of the court filings, it declines to take judicial notice of the truth of the factual allegations therein. *See Fernandez-Medina v. Olivarez*, No. 3:20-CV-05703-RAJ-JRC, 2022 WL 358407, at *2-3 (W.D. Wash. Jan. 14, 2022) (taking judicial notice of warrant application and affidavit authorizing plaintiff's arrest but declining to take judicial notice of the factual allegations in those documents).

ORDER GRANTING MOTION TO DISMISS - 4

1   **C.      Mr. Iceberg Files this Suit**

2           Mr. Iceberg filed his pro se complaint in Snohomish County Superior Court on January 31,

3   2025, Dkt. No. 1-4 at 11–22, followed by an amended complaint on February 3, 2025, Dkt. No. 1-

4   2 at 2–18. Because the amended complaint included a Section 1983 claim, Defendants removed

5   the case to this Court on March 10, 2025. Dkt. No. 1 at 2–3 (noting that Mr. Iceberg served the

6   amended complaint on Mr. Distelhorst on February 13, 2025).

7           The amended complaint names as Defendants Laurie Olson (the Director of HASCO and

8   sued only in her individual capacity), Jane Doe (an unknown HASCO employee), and Mr.

9   Distelhorst (also sued only in his individual capacity). Dkt. No. 1-2 at 3–4. Mr. Iceberg asserts a

10  claim under Section 49.60.220 of the Revised Code of Washington, alleging that "Defendants are

11  aiding, abetting, encouraging, and inciting, HASCO to retaliate against Plaintiff, and terminate his

12  voucher, due to Plaintiff requesting accommodations, and filing a lawsuit under RCW 49.60." *Id.*

13  at 9. Next, he asserts a claim under Section 59.18.255, alleging that "Defendants conspired to

14  terminated Plaintiff['s] voucher shortly after Plaintiff filed this lawsuit, which contained a request

15  for relief under RCW 59.18.255." *Id.* He also brings a claim under 42 U.S.C. § 1983 for First

16  Amendment retaliation, alleging that he has a right to "investigate and bring to light child sexual

17  abuse perpetrated by government employees," protest in front of their homes, and "call a

18  government employee a child molest[e]r." *Id.* at 10–11. Mr. Iceberg also brings a state law claim

19  for outrage, alleging that "[i]t is beyond the pale for government employees to conspire together

20  to make a disabled indigent person homeless based on that person protected activity under the law

21  and/or disability related behavior." *Id.* at 11. Finally, he brings a claim for civil conspiracy and

22  contends that Defendants conspired "to cancel Plaintiff's voucher, cause Plaintiff to become

23  homeless, and bar Plaintiff from every receiving housing assistance again, due solely to Plaintiff's

24  protected activity under RCW 49.60, RCW 59.18.255, and/or the First Amendment." *Id.* at 12.

## II.    DISCUSSION

**A.    Mr. Iceberg's Request for Accommodations**

Mr. Iceberg states in his response brief that he "would ask the Court to dismiss this matter without prejudice to give Plaintiff time to receive diagnosis and treatment for an apparent cognitive disability, which appears to be mild cognitive impairment, dementia, and/or schizophrenia." Dkt. No. 14 at 4. A plaintiff may voluntarily dismiss his case under Federal Rule of Civil Procedure 41, but it does not appear that that is what Mr. Iceberg is attempting to do here.[3] The sentence about dismissal appears under the heading, "Request for Reasonable Accommodation Pursuant to Judicial Conference Policy," Dkt. No. 14 at 4, and when read in the context of his full nine page response to Defendants' motion to dismiss, shows that he is not requesting to voluntarily dismiss this case. Rather, he is seeking dismissal without prejudice—and with leave to amend—as an accommodation for his disabilities and only as an alternative if the Court declines to deny Defendants' motion outright. *See, e.g.*, *id.* at 9 (requesting that the Court "deny Defendant[s'] motion to dismiss, or in the alternative, dismiss Plaintiff's complaint without prejudice"); *see also id.* at 2 (same); *id.* at 6–7 (requesting leave to amend). Accordingly, the Court does not construe Mr. Iceberg's response as a request to voluntarily dismiss his complaint.

The Court next considers Mr. Iceberg's "request for reasonable accommodation" for his disabilities. *Id.* at 4. As a threshold issue, the ADA does not apply to the federal courts. *See* 42 U.S.C. § 12131(1); *Roman v. Jefferson at Hollywood LP*, 495 F. App'x 804, 806 (9th Cir. 2012). The same is true for the Rehabilitation Act. 29 U.S.C. § 794(a)-(b); *see also Davis v. Am. Express Prepaid Card Mgmt. Corp.*, No. 1:16-CV-00591-MJS, 2017 WL 1398851, at *2 (E.D. Cal. Apr. 19, 2017) ("[T]he Rehabilitation Act does not apply to the federal courts: it only covers Executive

---

[3] Mr. Iceberg has not filed a notice of dismissal, which he is entitled to do because Defendants have not filed an answer or motion for summary judgment. Fed. R. Civ. P. 41(a)(1)(A)(i).

1    agencies, the United States Postal Service, and certain categories of programs and activities

2    receiving Federal funding.").

3         In addition, Mr. Iceberg's request for accommodations is vague and seems to ask only that

4    the Court dismiss without prejudice if it is inclined to dismiss. Dkt. No. 14 at 4. Even if that could

5    be an appropriate accommodation, his contention that he "cannot compose full and cogent

6    pleadings, nor fully access the court" is belied by the cogent nine page response he filed, *see*

7    *generally* Dkt. No. 14, and the fourteen lawsuits he has filed in this district, *see, e.g.*, *Iceberg v.*

8    *Armstrong*, 3:24-cv-05929-BHS (W.D. Wash. Nov. 7, 2024); *Iceberg v. Brookstone Landscape &*

9    *Design LLC*, 2:23-cv-01871-KKE (W.D. Wash. Dec. 6, 2023); *Iceberg v. Univ. of Wash.*, 2:21-

10   cv-00494-RSM (W.D. Wash. Apr. 13, 2021). The Court thus declines to grant a disability related

11   accommodation at this time and considers the issue of whether leave to amend is warranted as a

12   matter of law, below.

13   **B.      Mr. Iceberg Received Notice of this Motion and Responded**

14        Mr. Iceberg contends that he did not receive notice of this motion until April 3, 2025

15   "because defendant did not serve [him] with Defendant's motion to dismiss." Dkt. No. 14 at 8.

16   However, Defendants sent the motion to Mr. Iceberg via email on March 17, 2025 and by mail the

17   following day. Dkt. No. 9 at 23; Dkt. No. 16 at 1; *see also* Fed. R. Civ. P. 5(b)(2)(C) (permitting

18   service of motions by mail; service is complete upon mailing). Mr. Iceberg was able to file a timely

19   response, Dkt. No. 14, and did not request additional time to respond. This issue thus does not

20   affect the outcome of the motion.

21   **C.      Legal Standard**

22        Rule 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which

23   relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this standard, the Court construes the

24   complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon*

*Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not, however, accept as true legal conclusions or "formulaic recitations of the elements of a cause of action." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although the Court construes pro se complaints liberally, *see Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003), such complaints must still include "(1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]" Fed. R. Civ. P. 8(a). A plaintiff's pro se status does not excuse compliance with this bedrock requirement. *See Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107–08 (9th Cir. 2000) (explaining that the lenient pleading standard does not excuse a pro se litigant from meeting basic pleading requirements); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (although the court has an obligation to liberally construe pro se pleadings, it "may not supply essential elements of the claim that were not initially pled" (quoting *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982))). Rule 8(a)'s standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**D.    The Court Dismisses Mr. Iceberg's State Law Claims**

Defendants contend that Mr. Iceberg's state law claims must be dismissed because he did not comply with Washington's pre-suit notice requirements. Dkt. No. 9 at 12. Washington Revised

Code § 4.96.020(2) requires plaintiffs to first present any claim for damages "against a local government entity, or against any local governmental entity's officers, employees, or volunteers, acting in such capacity" to the entity's appointed agent "within the applicable period of limitations within which an action must be commenced." A claim is not deemed "presented" until the plaintiff delivers a completed claim form to the agent "in person" or sends the form to the agent or a person designated to accept delivery at the agent's office "by regular mail, registered mail, or certified mail, with return receipt requested[.]" Wash. Rev. Code § 4.96.020(2); *see also id.* § 4.96.020(3)(a) (setting forth the information that a plaintiff must supply in the standard tort claim form). The statute bars all claims against the local government entity and its employees "until sixty calendar days have elapsed after the claim has been first presented to the agent of the governing body thereof." *Id.* § 4.96.020(4); *see Dunn v. City of Seattle*, 420 F. Supp. 3d 1148, 1157 (W.D. Wash. 2019) ("[P]arties [must] present tort claims against local government entities to the entity and then wait 60 days before filing suit."); *Richmond v. Spokane Cnty.*, No. 2:21-CV-00129-SMJ, 2021 WL 4951574, at *2 (E.D. Wash. Oct. 25, 2021) (purpose of statute is to "give governments time to investigate potential claims and to encourage settlement").

All of Mr. Iceberg's state law claims against all Defendants require pre-suit filing. HASCO is a "local governmental entity" within the meaning of Washington's Tort Claim Act, Chapter 4.96, because housing authorities are municipal corporations. *See* Wash. Rev. Code § 4.96.010(2) (defining "local governmental entity" to include municipal and quasi-municipal corporations); *Id.* § 35.82.030 (authorizing the creation of housing authorities); *Housing Auth. of Seattle v. City of Seattle*, 351 P.2d 117, 118 (Wash. 1960) (describing the creation of housing authorities in 1939 as municipal corporations). Mr. Iceberg identifies Ms. Olson and Mr. Distelhorst as HASCO employees. *See* Dkt. No. 1-2 at 3. Although Mr. Iceberg has sued both of them in their individual capacities only, *id.*, the pre-suit notice requirements apply to employees and officers when they

are "sued in their individual capacity but . . . acting within the scope of employment." *Hanson v. Carmona*, 525 P.3d 940, 955 (Wash. 2023). Mr. Iceberg's contentions show that the individuals were acting in the scope of their employment and official HASCO duties when they allegedly denied him accommodations and tenancy at Ebey Arms, communicated with him about his requests, and terminated his housing voucher. Dkt. No. 1-2 at 3, 6–8.

In addition, Mr. Iceberg's claims sound in tort and require pre-suit notice. This is true for his claim under the Washington Law Against Discrimination, ("WLAD"), Wash. Rev. Code § 49.60, *see Bearden v. City of Ocean Shores*, 644 F. Supp. 3d 876, 890–91 (W.D. Wash. 2022); and his claim of outrage, *Cronk v. City of W. Richland*, No. 4:14-CV-5041-EFS, 2015 WL 853863, at *4 (E.D. Wash. Feb. 26, 2015). The claim under Section 59.18.255 also sounds in tort. Washington's Residential Landlord Tenant Act was amended in 2018 to add Section 59.18.255, which prohibits "source-of-income discrimination by landlords." *Lockett v. Saturno*, 505 P.3d 157, 161 (Wash. Ct. App. 2022).[4] The statute entitles aggrieved individuals to file a civil action. *Lockett*, 505 P.3d at 162 (citing Wash. Rev. Code § 59.18.255(4)). The Washington Supreme Court has not opined about whether the pre-suit requirements of Section 4.96 apply to a discrimination claim against a public entity under Section 59.18.255. When the state's highest appellate court has not spoken on an issue of state law, a federal court's role is to predict what decision that court would reach. *Westport Ins. Corp. v. California Cas. Mgmt. Co.*, 916 F.3d 769, 774 (9th Cir. 2019). Although Washington courts have not opined on this issue, they have characterized Section 59.18.255 as a discrimination claim, *Lockett*, 505 P.3d at 159, and "characterized a discrimination action as a tort," *Blair v. Washington State Univ.*, 740 P.2d 1379, 1388 (Wash. 1987). The Court thus agrees with Defendants that Washington courts would apply the pre-suit notice requirements

---

[4] Defendants do not dispute that the definition of a landlord includes public entities and employees. Wash. Rev. Code § 59.18.030(16).

of Section 4.96 to a Section 59.18.255 claim. The Court also agrees with Defendants that Mr. Iceberg's civil conspiracy claim based on the same underlying torts—Sections 49.60 and 59.18.255—are also subject to the notice requirements. Dkt. No. 9 at 14; *see also* Dkt. No. 1-2 at 12 (alleging a civil conspiracy claim based on violations of Sections 49.60 and 59.18.255 and the First Amendment); *In re Phenylpropanolamine (PPA) Products Liability Litig.*, No. MDL 1407, 2005 WL 2207037, at *3 (W.D. Wash. Aug. 29, 2005) (explaining that "because the crux of a civil conspiracy is not the conspiracy itself but the tort committed through the conspiracy, a complaint must properly allege all of the elements of the underlying tort"). Because Mr. Iceberg has not established that he complied with the pre-suit requirements for his state law torts, he has not stated a related claim for civil conspiracy either.[5]

In his response brief, Mr. Iceberg recites the elements of his various causes of action and seeks leave to amend, Dkt. No. 14 at 5–9, but he does not contest that he did not file a pre-suit claim. Nor does his amended complaint allege that he filed a pre-suit claim. *See generally* Dkt. No. 1-2. Accordingly, the Court dismisses Mr. Iceberg's state law claims with leave to amend solely to add allegations regarding his compliance with the state's pre-suit filing requirements. *Spry v. Pierce Cnty.*, No. C-09-5097 KLS, 2010 WL 254565, at *1 (W.D. Wash. Jan. 19, 2010) ("Failure to comply with the statutory filing requirements requires dismissal of the Plaintiff's state law claims.").

### E.   The Court Dismisses Mr. Iceberg's Section 1983 Claim

Mr. Iceberg contends that "[i]n order to chill Plaintiff's protected speech, silence his criticism, and retaliate against Plaintiff[,] Defendants have chosen to cancel Plaintiff's voucher,

---

[5] Section 4.96 and its requirements to do not apply to Section 1983 claims. *See Boston v. Kitsap Cnty.*, 852 F.3d 1182, 1185 (9th Cir. 2017) ("It is . . . well settled that state notice of claim provisions are inapplicable to § 1983 actions."). Therefore, the Court does not apply that section or its pre-suit notice obligations to Mr. Iceberg's First Amendment claim or related conspiracy claim, Dkt. No. 1-2 at 10–12, which are discussed below.

and make him homeless." Dkt. No. 1-2 at 10.

A plaintiff may bring a First Amendment retaliation claim by alleging that

(1) it engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech.

*Ariz. Student's Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (cleaned up). "Further, to prevail on such a claim, a plaintiff need only show that the defendant 'intended to interfere' with the plaintiff's First Amendment rights and that it suffered some injury as a result; the plaintiff is not required to demonstrate that its speech was actually suppressed or inhibited." *Id.* (quoting *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Defendants contend that this claim should be dismissed for two reasons: "1) collateral estoppel bars [Mr. Iceberg's] claim; and 2) he fails to allege personal participation of any Defendant." Dkt. No. 9 at 16. Mr. Iceberg's response does not address the collateral estoppel issue. *See generally* Dkt. No. 14. As for the personal participation issue, he contends that "Jane Doe" is actually Chad Hansen, "the attorney for HASCO." *Id.* at 2. He states that "Mr. Hansen admitted gleefully during a[n] April 4th, 2025 informal hearing that HASCO terminated Plaintiff's voucher due to Plaintiff threatening to file lawsuits, and calling HASCO employees a piece of shit." *Id.*

Mr. Iceberg's general allegation against all Defendants, Dkt. No. 1-2 at 10, is insufficient to allege the required personal participation by any of them. *See, e.g.*, *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (explaining that a plaintiff must allege that each defendant personally participated in the conduct alleged to have violated his constitutional rights); *see also Seagraves v. Dep't of Children Youth & Families*, No. 3:24-cv-05081-TMC, 2024 WL 4253192, at *3 (W.D. Wash. Sept. 20, 2024) ("In a case against multiple defendants, the complaint must allege specifically what each defendant did wrong, rather than asserting general allegations against the

defendants as a group."). Mr. Iceberg also alleges that "Defendant Jane Doe, in conspiracy with Defendant Olson, and Defendant Distelhorst, decided to terminate Plaintiff's voucher." Dkt. No. 1-2 at 8. But that conclusory allegation of a "conspiracy"—unaccompanied by facts about what each Defendant actually did—is too general to state a claim against Ms. Olson and Mr. Distelhorst.

Mr. Iceberg's claim against Jane Doe is also subject to dismissal. Although he now claims to know that defendant's true identity, Dkt. No. 14 at 2, he cannot amend his complaint via his response to the motion to dismiss, *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Fairhaven Health, LLC v. BioOrigyn, LLC*, No. C19-1860-RAJ, 2020 WL 5630473, at *10 (W.D. Wash. Sept. 21, 2020). Nor has he requested to amend the complaint to allege that defendant's true identity, and "Doe" pleading is disfavored in federal court. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). The Court therefore grants Defendants' motion to dismiss Mr. Iceberg's First Amendment claim for failure to state a claim.[6]

## F.    Leave to Amend

"Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). Here, it is not "absolutely

---

[6] The Court notes that in suits under Section 1983, courts have discretion under 42 U.S.C. § 1988 to award reasonable attorney's fees to the prevailing party, including to a prevailing defendant. *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1187 (9th Cir. 2012). Specifically, a prevailing defendant may recover fees in "exceptional circumstances" where the court finds that the plaintiff's claims are "frivolous, unreasonable, or groundless." *Id.* (quoting *Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 971 (9th Cir. 2011)). Frivolous cases include

> where (1) reasonable inquiry was not made and which are insufficient as a matter of law, [*Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998)]; (2) the causes of action do not provide liability against defendants, *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997); (3) the case seeks money damages from immune defendants, *Franceschi v. Swartz*, 57 F.3d 828, 832 (9th Cir. 1995); or (4) the case has no evidence supporting it, *Evers v. County of Custer*, 745 F.2d 1196, 1199 (9th Cir. 1984).

*Kivlin v. City of Bellevue*, No. C20-0790-RSM, 2021 WL 5140260, at *10 (W.D. Wash. Nov. 4, 2021).

clear" that Mr. Iceberg cannot amend his state law claims to allege compliance with Section 4.96 (if warranted), so the Court grants him leave to amend to address that issue.

Whether to grant leave to amend the First Amendment claim is more complicated because Defendants contend that the claim is barred by collateral estoppel. Dkt. No. 9 at 16. The Court thus pauses to examine that contention because if Defendants are correct, Mr. Iceberg is not entitled to amend to reassert a barred claim. *See Gamble v. Pac. NW Reg'l Council of Carpenters*, No. 2:14-cv-455-RSM, 2015 WL 402782, at \*2, \*7 (W.D. Wash. Jan. 29, 2015) ("Leave to amend need not be granted, and dismissal may be ordered with prejudice, if amendment would be futile," such as when a claim "fails as a matter of law").

Collateral estoppel, also known as issue preclusion, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (cleaned up). In determining the preclusive effect of a state court judgment, federal courts follow the state's rules of preclusion. *Kremer v. Chem. Const. Corp.,* 456 U.S. 461, 482 (1982). In Washington, issue preclusion "bars relitigation of an issue in a later proceeding involving the same parties." *Schibel v. Eymann*, 399 P.3d 1129, 1132 (Wash. 2017). Issue preclusion "promotes judicial economy and prevents inconvenience or harassment of parties," providing "finality in adjudications" and "shielding parties and courts from expending resources in repetitive litigation." *Id.* It may bar a plaintiff from asserting a claim that he previously litigated and lost against a different defendant. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979); *see also Sahlberg v. P.S.C. Inc.*, 626 F. App'x 719, 721-22 (9th Cir. 2015) (explaining that the doctrine of defensive non-mutual collateral estoppel may bar plaintiffs from asserting a claim that they previously litigated and lost against a different defendant). For issue preclusion to apply, (1) the issue in the earlier proceeding must be identical to the issue in the later proceeding, (2) the

1  earlier proceeding must have ended with a final judgment on the merits, (3) the party against whom

2  collateral estoppel is applied must have been a party, or in privity with a party, to the earlier

3  proceeding, and (4) applying collateral estoppel must not be an injustice. *Schibel*, 399 P.3d at 1132.

4      An issue is "identical to the issue in the later proceeding" when it was "actually litigated

5  and necessarily decided in the first proceeding." *Sprague v. Spokane Valley Fire Dep't*, 409 P.3d

6  160, 183 (Wash. 2018). Defendants contend that Mr. Iceberg's First Amendment claim presents

7  the same issue as the state court proceeding: whether his speech is protected by the First

8  Amendment. Dkt. No. 9 at 16. In this lawsuit, Mr. Iceberg contends that the following speech was

9  protected (and led Defendants to retaliate against him): swearing at government employees,

10 criticizing them, investigating and "bring[ing] to light child sexual abuse perpetuated by

11 government employees," protesting in front of government employees' homes "within the public

12 right of way," calling a government employee a child molester, requesting reasonable

13 accommodations for his disabilities, opposing alleged discrimination by HASCO, and threatening

14 to file lawsuits. Dkt. No. 1-2 at 6–7, 10–11. However, it is not clear that any of the three Snohomish

15 County Superior Court orders Defendants cite addressed *all* the same speech Mr. Iceberg relies on

16 here.

17     First, Defendants cite to an unsigned "working version" of a state court order finding Mr.

18 Iceberg to be a vexatious litigant, Dkt. No. 10 at 1 (citing Dkt. No. 10-1), but the Court does not

19 consider that unsigned document. Second, although the Snohomish County Superior Court granted

20 Mr. Distelhorst's motion for revision, it is not clear that it considered speech identical to what Mr.

21 Iceberg alleges in this lawsuit against multiple Defendants (not just Mr. Distelhorst). Dkt. No. 10-

22 7 at 2. That order states that Mr. Distelhorst's anti-harassment petition "presented a knowing and

23 willful course of conduct directed at Petitioner that is not protected speech," but does not elaborate

24 on the content of that speech. *Id.* Third, the Snohomish County Superior Court's order denying

Mr. Iceberg's Anti-Slapp motion also did not elaborate on the content of the alleged speech. Dkt. No. 10-9 at 2 (holding that "[t]he conduct complained of in the Petition for protection order . . . includes defamatory and harassing speech that is not protected speech[.]"). In sum, while the Snohomish County Superior Court rejected Mr. Iceberg's contention that his defamatory and harassing speech was protected, it is not clear on the current record that it concluded that the other speech Mr. Iceberg alleges here—such as "requesting reasonable accommodations" and "opposing disability discrimination"—is unprotected. Dkt. No. 1-2 at 8.

Thus, the Court cannot conclude as a matter of law that the issues in the two proceedings are identical or that the Snohomish County Superior Court "necessarily decided" that all the same speech asserted here was unprotected. Accordingly, the Court does not find on this record that Mr. Iceberg's First Amendment claim is barred by issue preclusion, and it thus grants him leave to amend the claim.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss. Dkt. No. 9, and DISMISSES Mr. Iceberg's amended complaint, Dkt. No. 1-2, with limited leave to amend as described above. Mr. Iceberg's second amended complaint, should he choose to file one, must provide a short and plain statement of the factual basis of his claim as required by Federal Rule of Civil Procedure 8, assert whether he complied with Washington's statutory pre-suit notice requirements for any state law tort claim, and allege personal participation for any First Amendment claim. A timely filed amended complaint operates as a complete substitute for an original pleading. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). For that reason, any amended complaint must clearly identify the defendant, the claim asserted, the specific facts that Mr. Iceberg believes support the claim, and the specific relief requested. If Mr. Iceberg does

not file a proper second amended complaint by June 9, 2025, the Court will dismiss this action and close this case.

Dated this 19th day of May, 2025.

Lauren King
United States District Judge