Hon. Lauren King

UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT ICEBERG,                          )
                                        )
                        Plaintiff,      )    No. 2:25-cv-00422-LK
        vs.                             )
                                        )
                                        )    SECOND AMENDED COMPLAINT
LAURIE OLSON, et. al,                   )    FOR DAMAGES, DECLARATORY
                                        )    RELIEF, AND INJUNCTIVE RELIEF
                        Defendants.     )
                                        )    JURY TRIAL DEMANDED
_____)

I.      INTRODUCTION

        This case concerns the Housing Authority of Snohomish County ("HASCO"), Luke

Distelhorst, and Chad Hansen's, willful and deliberate indifference to Plaintiff's rights under

federal law. First, Defendants repeatedly threatened Plaintiff with termination of Plaintiff's

Section 8 voucher in order to chill Plaintiff's protected activity under the First Amendment.

Defendants then followed through with the threat, and terminated Plaintiff's voucher in

retaliation for, and substantially motivated by, Plaintiff's protected activity under the First

Amendment. Furthermore, Defendants terminated Plaintiff's voucher without requisite due

process. Defendants' notices were constitutionally and statutorily deficient. Plaintiff was afforded

SECOND AMENDED COMPLAINT - 1

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

no opportunity to cross-examine adverse witnesses, such as Luke Distelhorst, during the informal

hearing. This Court should find that Defendants violated Mr. Iceberg's rights under the First

Amendment, and that Defendants violated Mr. Iceberg's procedural due process rights under the

Fourteenth Amendment.


## II.    JURISDICTION AND VENUE

1.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and under 42 U.S.C.

§1983.


2.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's

state law claims because they are related to Plaintiff's original jurisdiction claims, arise out of a

common nucleus of related facts, and are part of the same case or controversy under Article III of

the United States Constitution. Plaintiff will attempt to incorporate his claims which sound in tort

via an amended complaint after complying with RCW 4.96.


3.    Venue is proper in the Western District of Washington because the claims arise in

Snohomish County.


## III.    PARTIES


4.    Plaintiff Scott Iceberg was a resident of Snohomish County, Washington and lived at the

Outpost Apartments, located in Arlington, Washington. Plaintiff is now homeless. Plaintiff has

been diagnosed with and currently suffers from C-PTSD, Panic Disorder, Major Depressive

SECOND AMENDED COMPLAINT - 2

Disorder, and Ulcerative Colitis. Plaintiff is mentally ill and immune compromised due to disability.

5.    Defendant Housing Authority of Snohomish County is a municipal corporation organized under the laws of Washington State to provide housing for low-income people. Defendant receives federal financial assistance to provide this housing. Defendant Housing Authority of Snohomish County, herein after referred to as "HASCO" administered Plaintiff's Non-Elderly Disabled Section 8 Housing choice voucher, herein after referred to as "voucher".

6.    Defendant Chad Hansen is an attorney for HASCO, who personally participated in the alleged acts and omissions herein. Defendant Hansen promulgates and implements HASCO policies and procedures. Defendant Hansen is sued in his personal and official capacities. Defendant Hansen is a resident of Snohomish County

7.    Defendant Luke Distelhorst is a commissioner for HASCO, who personally participated in the alleged acts and omissions herein. Defendant Distelhorst is sued in his personal and official capacities.

IV.    FACTS

8.    Plaintiff often utilizes the First Amendment to oppose what he perceives to be rampant disability discrimination. This includes, but is not limited to, calling HASCO employees "a piece of shit", emailing HASCO employees, calling HASCO employees, criticizing HASCO for

SECOND AMENDED COMPLAINT - 3

charging $60 application fees at the Ebey Arms apartment, telling HASCO employees they are the reason so many homeless people exist, indicating his intent to file lawsuits related to matters of public concern, including disability discrimination, the First Amendment, and source of income discrimination, indicating his intent to protest on the public right of way in front of HASCO employee's homes, and freely associating with and communicating with neighbors of HASCO employees.

9.    Plaintiff often petitions and protests government, including government employees, using criticism, commentary, hyperbole, free association, free expression, profanity, vulgarity, annoyance, causing alarm, character assassination, and/or otherwise attempting to be a persistent thorn in the side of government as a means to petition and protest in a free and fair democratic society.

10.    Plaintiff is familiar with his "family obligations" and/or 24 CFR 982.552(c). However, Plaintiff is, and has been, confused and unaware as to what 24 CFR 982.552(c)(viii) means when it states without definition: "has engaged in or threatened abusive...behavior". Mr. Iceberg does not understand what constitutes, and neither federal law, nor federal court jurisprudence, defines, "abusive behavior".

11.    According to Defendant Hansen: ""Abusive behavior is serious. It threatens the health and well-being of others. It's not merely annoying, unpleasant, or difficult behavior.", and "Abusive behavior isn't just merely annoying or disagreeable behavior. It is abuse." This statement, made by Defendant Hansen at an April 4, 2025, informal hearing, where Mr. Hansen

SECOND AMENDED COMPLAINT - 4

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

acted as both advocate and witness, confuses Plaintiff, and would confuse any person of ordinary intelligence as to what constitutes, or does not constitute, "abusive behavior" as it relates to 24 CFR 982.552(c)(viii).

12.    Mr. Iceberg has never threatened the health or well-being of others.

13.    § 982.552(c)(viii) does not provide a person of ordinary intelligence what acts and/or omissions may constitute a violation of § 982.552(c)(viii) and thus warrant termination of a section 8 voucher recipient's housing assistance.

14.    When Mr. Iceberg questioned Defendant Hansen under oath at an April 4, 2025, informal hearing: "In your opinion, with regard to the specific statute you rely on to terminate my voucher, what constitutes abusive behavior? Defendant Hansen replied: "Threatening individuals, using profanity with individuals. When Mr. Iceberg question Defendant Hansen: "Threatening individuals how?" Defendant Hansen replied: "Threatening individuals with lawsuits, threatening individuals with going to their houses, threatening individuals with talking to their neighbors"

15.    Mr. Iceberg has never "threatened individuals with going to their houses". Mr. Iceberg has repeatedly indicated his intent to petition and protest on the public right of way outside HASCO employee homes, however.

SECOND AMENDED COMPLAINT - 5

16.    When Mr. Iceberg questioned Defendant Hansen under oath at an April 4, 2025, informal hearing: "You said using profanity constitutes abusive behavior under the statute, the CFR, which HASCO is relying on to terminate my voucher. So literally using profanity is something that would cause a person to lose their voucher if they use profanity towards HASCO staff?" Defendant Hansen replied: "That's correct".

17.    When Mr. Iceberg questioned Defendant Hansen under oath at an April 4, 2025, informal hearing: "Is contacting a government employee at a personal email protected activity under the First Amendment?" Defendant Hansen replied: "It's not protected activity under the voucher obligations that you agreed to."

18.    When Mr. Iceberg questioned Defendant Hansen under oath at an April 4, 2025, informal hearing: "Is calling a government employee a piece of shit, protected activity under the First Amendment? I'm asking for your legal opinion as a licensed attorney" Defendant Hansen replied: "I can tell you that regardless of the First Amendment, when you agree to participate in HASCO's voucher program, you sign an agreement that includes family obligations that you will not engage in abusive or threatening behavior with HASCO staff. In this case, that would include our board members who have no discretion in the day operation.

19.    When Mr. Iceberg questioned Defendant Hansen under oath at an April 4, 2025, informal hearing: "Are HASCO staff government employees?" Defendant Hansen replied: "Yes".  Mr. Iceberg then questioned Defendant Hansen: "In your opinion, under the First Amendment, is it protected activity to use profanity, such as swearing, calling people a piece of shit, directed

SECOND AMENDED COMPLAINT - 6

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

towards government employees including HASCO staff? Defendant Hansen replied: "Again, as I

mentioned earlier, when you entered into the contract..."


20.    When Mr. Iceberg questioned Defendant Hansen under oath at an April 4, 2025, informal

hearing: "Is there any other instances of me contacting Mr. Distelhorst, in which I might have

engaged in , in your personal or legal opinion, physically threatening and or abusive behavior?

Defendant Hansen replied:

"My understanding is that I think you probably contacted him or his neighbor, maybe three or

four times, I think you emailed him maybe twice, I'm not sure of that exact number. You left a

voicemail for him, maybe"


21.    Due to Plaintiff's disability, and medications Plaintiff has taken due to disability,

including heavy use of prescribed corticosteroids, in combination with severe stress directly

related to many instances of being subject to overt disability discrimination, Mr. Iceberg has

suffered, and continues to suffer, intermittently, severe delusions and hallucinations. These

delusions and hallucinations started approximately around early January 2025, and continue

intermittently.


22.    Mr. Iceberg has an intermittent sincerely held belief that there is an ongoing child abuse

network being perpetrated by various high-level Democrats who control the State of Washington.

This has become an unshakeable belief for Mr. Iceberg.


SECOND AMENDED COMPLAINT - 7

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

23.    Mr. Iceberg's mental health has worsened significantly since Defendants terminated

Plaintiff's voucher, and caused Mr. Iceberg, who is mentally ill, and immune compromised, to be

forced to live in his car, without basic access to sanitation.

24.    Stress, for example the stress of having to compose this complaint, causes Mr. Iceberg to

slip back into hallucinations and delusions. When Mr. Iceberg focuses on engaging in mitigating

measures to manage the substantial limitations imposed by disability, such as stress avoidance,

he is not tormented by delusions and hallucinations.

25.    Around approximately February 2024, Plaintiff utilized profanity, as he often does, when

communicating with HASCO employees via email.

26.    On February 22, 2024, Defendant Chad Hansen sent Plaintiff the following email:

"This email is in response to the four emails I've received from you since my last response to

you yesterday afternoon. First, use of profanity or threatening or abusive behavior toward staff is

a violation of the family obligations that every voucher holder agrees to when they receive a

voucher. Going forward, I expect you not to use profanity in your communications with me or

other HASCO staff. With regards to your question about who at HASCO would decide to

terminate your voucher, I will refer you to Chapter 12-II of HASCO's Administrative Plan which

discusses HASCO's approach to termination of assistance. As mentioned in the response you

received from HASCO's public records department, requests for information not kept in records

such as employee names performing specific tasks are not public records, and this is also the

case for who might decide a termination that is not happening at this time."

SECOND AMENDED COMPLAINT - 8

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

1

2    27.    Defendant Chad Hansen's email had the intent and/or effect of chilling Plaintiff's speech

3    based on the content of said speech.

4

5    28.    Defendants' February 22, 2024, email would have the effect of chilling the protected

6    speech of any person of ordinary firmness.

7

8    29.    Due to Defendant Hansen's February 22, 2024, email, Mr. Iceberg experienced severe

9    aggravation of his disability, in the form of extreme emotional distress including but not limited

10   to suicidal ideation, due to Defendant Hansen threatening Plaintiff with termination of his

11   voucher due solely to Plaintiff's protected speech. Plantifff has repeatedly informed HASCO that

12   threatening him with homelessness puts Plaintiff at risk of self-harm, including causing Plaintiff

13   to experience and express suicidal ideation. Defendants did not respond, other than to repeatedly

14   castigate Plaintiff for informing Defendants that their acts and omissions cause aggravation of

15   Plaintiff's disability.

16

17   30.    Defendants have no training, and have consulted with no qualified professionals, to

18   determine if threatening Plaintiff with homelessness may cause Plaintiff to experience and/or

19   express suicidal ideation and or engage in self-harm and/or suicidal ideation. Defendants are

20   deliberately indifferent that their acts and omissions, including repeatedly threatening Plaintiff

21   with termination of his voucher, may cause him to harm or kill himself due to disability.

22

23

SECOND AMENDED COMPLAINT - 9

31.     Mr. Iceberg subsequently composed and filed a 42 U.S.C. §1983 complaint in King County Superior Court against Chad Hansen. However, the filing was ultimately rejected due to technicality, and Mr. Iceberg was unable to locate Mr. Hansen for purposes of serving Mr. Hansen. Plaintiff ultimately decided not to file said complaint because Mr. Iceberg was concerned that taxpayer funds would be wasted by HASCO in defending Mr. Hansen.

32.     Fast forward to January 10, 2025. Plaintiff's landlord informs Plaintiff that his lease would not be renewed.

33.     Between January 10, 2025, and January 22, 2025, Plaintiff  requested reasonable accommodations, and indicated to HASCO repeatedly his precarious state of health due to the stress of having to move, and experiencing perceived disability discrimination in his attempt at applying at the Ebey Arms apartments, owned by HASCO, all of which were ignored.

34.     Between January 10, 2025, and January 22, 2025, Plaintiff sent many emails criticizing HASCO and using profanity, including Defendant Distelhorst, which Plaintiff called: "a piece of shit".

35.     Between January 10, 2025, and January 22, 2025, Plaintiff called a HASCO employee and left a message.

SECOND AMENDED COMPLAINT - 10

36.     Between January 10, 2025, and January 22, 2025, Plaintiff indicated his intent to file lawsuits regarding matters of public concern, including the first amendment, disability discrimination, and source of income discrimination.

37.     On January 22, 2025, Defendant Hansen sent Plaintiff an anonymous and vague email threatening Plaintiff with the termination of his voucher:

"HASCO has received the many communications you have sent over the last 24 hours. This includes voicemails left on the personal cell phone of HASCO's Chief Operating Officer at 1:00 am, a voicemail sent to the business phone unaffiliated with HASCO of a member of HASCO's Board of Commissioners, and emails sent to the private email address of the same board member. Among these many communications, you use profanity, threaten legal action, sent a link to a song with lyrics about burning down a house with gasoline, and threaten to commit suicide in your apartment if your current landlords move to evict you. This behavior is completely inappropriate and a violation of the terms of the family obligations you agree to each year as a condition of your continued voucher eligibility which states "All family members will refrain from engaging in or threatening any abusive or violent behavior or language toward HASCO staff." Going forward, you are to address any communications about your voucher only to housing@hasco.org or by calling the main office line at (425) 290-8499. You are not to contact HASCO staff or board members on personal accounts or personal phone numbers. Such behavior is an attempt to harass, intimidate, and annoy. Further behavior of this nature may result in adverse actions such as termination of your voucher, or anti-harassment orders to protect the staff and board members who receive your abusive communications.

SECOND AMENDED COMPLAINT - 11

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

1    If you need a reasonable accommodation to assist you with communicating appropriately with

2    HASCO staff, you can use the help of a support person to help you craft appropriate

3    communications, or another accommodation can be explored to help ensure that your

4    communications are appropriate. An accommodation that allows you to continue to abuse,

5    threaten, harass, annoy, or swear at HASCO staff and board members will not be approved, as

6    the stress caused by such behavior creates a direct threat to the health and safety of the HASCO

7    staff that receive your communications. HASCO has seen your complaint about the third-party

8    management company that operates the Ebey Arms property and will reach out to the property

9    staff about how they review applications and make accommodations. However, please be aware

10   that HASCO will similarly not permit abusive behavior towards our contractors. To reiterate, the

11   contents and methods of your communications over the past 24 hours are both alarming and

12   inappropriate. Continued threatening and abusive communications could lead to termination of

13   your voucher based on the terms of the family obligations form that you sign each year.

14   Additional threatening and abusive communications will not be tolerated."

15

16   38.     Plaintiff was confused by Defendant Hansen's January 22, 2025, letter threatening

17   termination of his voucher. Mr. Iceberg was confused by Defendant Hansen's reference to what

18   Mr. Iceberg believes to be clearly protected activity under the First Amendment as a justification

19   for terminating Plaintiff's voucher. Mr. Iceberg was also confused as to the seemingly circular

20   logic and vague terminology Defendant Hansen references.

21

22   39.     Between January 22, 2025, and January 27, 2025, Defendant Distelhorst, and Defendant

23   Hansen had multiple meetings and communications where it was decided that Mr. Iceberg's

SECOND AMENDED COMPLAINT - 12

1   voucher would be terminated, substantially motivated, if not entirely motivated, by Mr. Iceberg's

2   protected activity under the First Amendment.

3

4   40.     On January 27, 2025, without giving Mr. Iceberg any chance to comply with his vague

5   and confusing January 22, 2025 notice, and without stating any specific facts as to why

6   Plaintiff's voucher was being terminated, Defendant Hansen sent Plaintiff the following email:

7   "This is your notification that the Housing Authority of Snohomish County has come to a

8   determination that we have sufficient grounds for the termination of your Section 8, Housing

9   Choice Voucher assistance, which will be effective on March 31, 2025 The reason(s) for the

10  decision to terminate assistance follow:

11  Other Family Obligations

12  o You have violated the family obligations for participation in the program, which prohibits

13  abusive and violent behavior. The Family Obligations form you signed and agreed to states, "All

14  family members will refrain from engaging in or threatening any abusive or violent behavior or

15  language tow ard HASCO staff."

16  Rule violated: 24 CFR 982.552(c), 24 CFR 5.2005(c); Admin Plan Chapter 12-/.E. Mandalay

17  Policies and other Authorized Terminations

18  A family member has engaged in or threatened violent or abusive behavior toward HASCO

19  personnel.

20  o Abusive or violent behavior towards HASCO personnel includes verbal as well as physical

21  abuse or violence. Use of racial epithets, or other language, written or oral, that is customarily

22  used to intimidate may be considered abusive or violent behavior.

23

SECOND AMENDED COMPLAINT - 13

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scottIceberg@yahoo.com

o Threatening refers to oral or written threats or physical gestures that communicate intent to abuse or commit violence."

41.    Plaintiff never engaged in or threatened violent or abusive behavior toward HASCO personnel.

42.    Plaintiff is unsure and is confused as to what "abusive behavior" might entail.

43.    Defendants' January 27, 2025 confusing and vague termination letter does not state any facts regarding what Mr. Iceberg did or did not do which caused HASCO to terminate his voucher. The notice simply recites the regulation.

44.    After requesting an informal hearing to contest the termination of his voucher, between January 27, 2025, and April 4, 2025, Plaintiff repeatedly informed Defendant Hansen that Plaintiff would need to cross-examine adverse witnesses, such as Mr. Distelhorst, Mr. Distelhorst's neighbor, at any voucher termination informal hearing.

45.    Mr. Iceberg repeatedly informed the hearing officer during the April 4, 2025, informal hearing that failure to allow Mr. Iceberg to cross examine adverse witnesses was a gross violation of his right to procedural due process. However, Mr. Iceberg was given no opportunity to cross examine adverse witnesses, and Defendant Hansen, acting as both witness and advocate, gave a vague retelling of what he thinks the adverse witnesses may have experienced and or testified. For example, when asked what Mr. Iceberg did to Mr. Distelhorst to warrant

SECOND AMENDED COMPLAINT - 14

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

termination of Mr. Iceberg's voucher, Defendant Hansen stated: "My understanding is that I think you probably contacted him or his neighbor, maybe three or four times, I think you emailed him maybe twice, I'm not sure of that exact number. You left a voicemail for him, maybe"

46.    HASCO has a policy and practice, created, implemented, and executed, by Defendant Hansen, that HASCO's administrative plan, HASCO's promulgated "family obligations", and 24 CFR 982.552(c), override the First Amendment, because voucher holders "sign a contract", as Defendant Hansen stated in the April 4th, 2025, informal hearing. Defendant's Hansen's statement further demonstrates HASCO's policy and practice: "I can tell you that regardless of the First Amendment, when you agree to participate in HASCO's voucher program, you sign an agreement." This demonstrates Defendant Hansen, who is a policy maker at HASCO, and HASCO at large, simply do not regard the First Amendment.

47.    Defendant Hansen had this to say at the April 4, 2025, informal hearing: "Mr. Iceberg's application to Ebey Arms was denied. And Mr. Iceberg's response to this denial included sending multiple communications to individuals affiliated with HASCO that contain profanity and threats of self-harm, tracking down the private emails and phone numbers of HASCO's COO, Janessa Store, Luke Distelhorst, and most egregiously, the cell phone of one of Mr. Distelhorst's neighbors, who is not affiliated with HASCO in any way.
Mr. Iceberg called Ms. Storey, the COO, her personal cell phone in the 1 a.m. following his denial, and he texted Mr. Distelhorst's neighbor at 2:30 in the morning that same evening, posing as another neighbor to claim that Mr. Distelhorst is a pedophile. Because it took a day or so to

SECOND AMENDED COMPLAINT - 15

learn about the text to Mr. Distelhorst's neighbor. the response that HASCO sent the following

day considered all of the other communications other than that text.

And so HASCO sent an email to Mr. Iceberg, that's Exhibit K in the hearing packet, warning Mr.

Iceberg that his behavior violated the program's family obligations to refrain from abusive

behavior. Warning him that additional abusive behavior would lead to his voucher's termination,

directing him to only communicate appropriately with HASCO staff going forward

There's many such examples over the course of Mr. Iceberg's time as a voucher recipient where

he's communicated his belief that he has an unrestricted right to communicate with HASCO

employees using any language or behavior that he sees fit considering it his protected activity.

He doubles down on that statement a lot, while also claiming that any denial of his request or any

other inconvenience to him in the administration of his voucher is either discrimination against

him or retaliation for what he considers protected activity. This includes a previous attempt to

file a lawsuit against me over a year ago for telling him not to use the F word in communications

with HASCO staff."


V.    CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF: First Amendment – 42 U.S.C. § 1983 - February 22, 2024 letter


48.    Plaintiff realleges and incorporates by reference the allegations in each of the

preceding paragraphs.


SECOND AMENDED COMPLAINT - 16

49.     Defendant Chad Hansen's February 22, 2024, email had the intent and/or effect of chilling Plaintiff's protected speech under the First Amendment, including chilling Plaintiff's clearly established protected activity of using profanity in communications with government employees.

50.     Defendant Chad Hansen's February 22, 2024, email would chill the protected activity of any person of ordinary firmness. This is because threatening a disabled low-income person with homelessness is outrageous, and would cause any person of ordinary firmness to experience extreme fear, which would naturally cause them to self-police and cease to engage in protected activity.

51.     Mr. Iceberg has a protected property intertest in maintaining his housing voucher.

52.     HASCO has a formal policy and/or practice of threatening to terminate the vouchers of recipients who engage in constitutionally protected activity, such as private citizens using profanity directed at HASCO employees, in order to chill such protected activity.

53.     HASCO has a formal policy and/or practice that HASCO's policies and practices preempt the First Amendment, and Fourteenth Amendment. These policies and practices were promulgated by, and implemented by, Defendant Hansen, an actual attorney.

SECOND AMENDED COMPLAINT - 17

54.     An actual attorney stating that HASCO's policies and practices trump the constitution demonstrates HASCO's contempt and deliberate indifference for federal law, and Plaintiff's rights under federal law.

55.     Defendant Hansen has been scheming to terminate Plaintiff's Section 8 voucher since at least February 2024, solely motivated by Mr. Iceberg using profanity, in this case, the F-word, as Defendant Hansen puts it, when communicating with HASCO staff. And again, this is an actual attorney, who went to a real law school. This demonstrates his deliberate indifference to Mr. Iceberg's federal rights. He knows what the law requires. He simply does not care, because he believes he will get away with violating Mr. Iceberg's rights. This is clearly evident by his testimony at the April 4, 2025, informal hearing.

56.     Defendant Hansen is an individual at HASCO with policymaking authority.

57.     Defendant Hansen made a decision in his official capacity to threaten to terminate Plaintiff's section 8 voucher via his February 22, 2024 email, in order to chill Plaintiff's protected speech, including Plaintiff using profanity, including but not limited to "the F-word" in communications with HASCO employees.

58.     Defendant Hansen's official decision to send Plaintiff the February 22, 2024 email caused Plaintiff constitutional injury in the form of chilling Plaintiff's protected speech, causing Plaintiff to fear his voucher would be terminated and that he would be homeless while immune compromised.

SECOND AMENDED COMPLAINT - 18

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

59.    Defendants' failures to comply with the United States Constitution were actions taken under color of state law and deprived Mr. Iceberg of his federal rights in violation of 42 U.S.C. § 1983.

60.    Defendants' failures to comply with the United States Constitution were taken due to Defendants' deliberate indifference to Plaintiff's constitutional and federal rights. Defendant Hansen is an attorney, and is well aware that his acts and omissions as alleged here violate the constitution. He simply does not care. This is very clear from his testimony during the April 4, 2025, informal hearing.

61.    HASCO, and all real defendants, are "persons" and acted under color of state law when they decided to chill Plaintiff's protected activity by threatening him with termination of his voucher and threatened him with homelessness.

SECOND CLAIM FOR RELIEF: First Amendment – 42 U.S.C. § 1983 - January 22, 2025, letter

62.    Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs.

63.    Mr. Iceberg has a protected property intertest in maintaining his housing voucher

SECOND AMENDED COMPLAINT - 19

64.     Defendant Chad Hansen's February 22, 2024 letter, threatening Plaintiff with termination of his section 8 voucher, has the intent and/or effect of chilling Plaintiff's protected speech under the First Amendment, including chilling Plaintiff's protected activity of using profanity in email with government employees.

65.     HASCO has an admitted pattern, practice, custom, and/or informal policy of threatening to terminate section 8 recipient's voucher's as retaliation for section 8 recipients engaging in protected activity under the First Amendment, such as using profanity, threatening to petition and protest, and/or associating with neighbors of HASCO employees freely. This is because the individuals who craft and implement HASCO's policies, including Defendant Hansen, have stated that HASCO's policies and practices preempt the constitution.

66.     HASCO'S widespread recurring practice of threatening to terminate section 8 recipient's vouchers to chill section 8 recipients' speech is so permanent and well settled as to constitute formal policy.

67.     Adhering to HASCO's practice of threatening to terminate section 8 voucher recipient's vouchers to chill protected activity under the First Amendment is what caused Defendants' to constitutionally injure Plaintiff in the form of chilling Plaintiff's speech by threatening to terminate his voucher substantially, if not entirely, motivated by Plaintiff's protected activity under the First Amendment, such as calling HASCO employees "a piece of shit", emailing HASCO employees, calling HASCO employees, criticizing HASCO for charging $60 application fees at the Ebey Arms apartment, telling HASCO employees they are the reason so

SECOND AMENDED COMPLAINT - 20

many homeless people exist, indicating his intent to file lawsuits related to matters of public

concern, including disability discrimination, the First Amendment, and source of income

discrimination,  indicating his intent to protest on the public right of way in from of HASCO

employee's homes, and freely associating with and communicating with neighbors of HASCO

employees.

68.     Defendant Hansen is an individual at HASCO with policymaking authority.

69.     Defendant Hansen made a decision in his official capacity to threaten to terminate

Plaintiff's section 8 voucher via his January 22, 2025 email, in order to chill Plaintiff's protected

speech, by again threatening to terminate his voucher, substantially, if not entirely, motivated by

Plaintiff's protected activity under the First Amendment, such as calling HASCO employees "a

piece of shit", emailing HASCO employees, calling HASCO employees, criticizing HASCO for

charging $60 application fees at the Ebey Arms apartment, telling HASCO employees they are

the reason so many homeless people exist, indicating his intent to file lawsuits related to matters

of public concern, including disability discrimination, the First Amendment, and source of

income discrimination,  indicating his intent to protest on the public right of way in from of

HASCO employee's homes, and freely associating with and communicating with neighbors of

HASCO employees.

70.     Defendant Hansen's official decision to send Plaintiff the January 22, 2025 email caused

Plaintiff constitutional injury in the form of chilling Plaintiff's protected speech, causing Plaintiff

SECOND AMENDED COMPLAINT - 21

1   to fear his voucher would be terminated, and that he would be homeless while immune

2   compromised.

3

4   71.    Defendants' failures to comply with the United States Constitution were actions taken

5   under color of state law and deprived Mr. Iceberg of his federal rights in violation of 42 U.S.C. §

6   1983.

7

8   72.    Defendants' failures to comply with the United States Constitution were taken due to

9   Defendants' deliberate indifference to Plaintiff's constitutional and federal rights. Defendant

10  Hansen is an attorney, and is well aware that his acts and omissions as alleged here violate the

11  constitution. He simply does not care. This is very clear from his testimony during the April 4,

12  2025, informal hearing.

13

14  73.    HASCO, and all real defendants, are "persons" and acted under color of state law when

15  they decided to chill Plaintiff's protected activity by threatening him with termination of his

16  voucher and threatened him with homelessness.

17

18  THIRD CLAIM FOR RELIEF: First Amendment – 42 U.S.C. § 1983- January 27, 2025 letter

19

20  74.    Plaintiff realleges and incorporates by reference the allegations in each of the preceding

21  paragraphs.

22

23

SECOND AMENDED COMPLAINT - 22

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

75.     HASCO, and all real defendants, are "persons" and acted under color of state law when they chilled Plaintiff's protected activity under the First Amendment.

76.     Mr. Iceberg has a protected property intertest in maintaining his housing voucher.

77.     Defendant Chad Hansen's January 27, 2025 email, terminating Plaintiff's voucher, was an act of pure retaliation, substantially, if not entirely, motivated by Mr. Iceberg's protected activity under the First Amendment, such as calling HASCO employees "a piece of shit", emailing HASCO employees, calling HASCO employees, criticizing HASCO for charging $60 application fees at the Ebey Arms apartment, telling HASCO employees they are the reason so many homeless people exist, indicating his intent to file lawsuits related to matters of public concern, including disability discrimination, the First Amendment, and source of income discrimination,  indicating his intent to protest on the public right of way in from of HASCO employee's homes, and freely associating with and communicating with neighbors of HASCO employees.

78.     HASCO has an admitted pattern, practice, custom, and/or informal policy of terminating section 8 recipient's vouchers as retaliation for section 8 recipients engaging in protected activity under the First Amendment, such as using profanity, threatening to petition and protest, and/or associating with neighbors of HASCO employees freely. This is because the individuals who craft and implement HASCO's policies, including Defendant Hansen, have stated that HASCO's policies and practices preempt the constitution.

SECOND AMENDED COMPLAINT - 23

79.     HASCO'S widespread recurring practice of terminating section 8 recipient's vouchers to retaliate against section 8 recipients' speech is so permanent and well settled as to constitute formal policy.

80.     Adhering to HASCO's practice of threatening to terminate section 8 voucher recipient's vouchers to chill protected activity under the First Amendment is what caused Defendants' to constitutionally injure Plaintiff in the form of retaliating against Plaintiff for his speech by terminating his voucher, substantially, if not entirely, motivated by Plaintiff's protected activity under the First Amendment, such as calling HASCO employees "a piece of shit", emailing HASCO employees, calling HASCO employees, criticizing HASCO for charging $60 application fees at the Ebey Arms apartment, telling HASCO employees they are the reason so many homeless people exist, indicating his intent to file lawsuits related to matters of public concern, including disability discrimination, the First Amendment, and source of income discrimination,  indicating his intent to protest on the public right of way in from of HASCO employee's homes, and freely associating with and communicating with neighbors of HASCO employees.

81.     Defendant Hansen is an individual at HASCO with policymaking authority.

82.     Defendant Hansen made a decision in his official capacity to terminate Plaintiff's section 8 voucher via his January 27, 2025 email, in order to retaliate against Plaintiff for his protected speech, substantially, if not entirely, motivated by Plaintiff's protected activity under the First Amendment, such as calling HASCO employees "a piece of shit", emailing HASCO employees,

SECOND AMENDED COMPLAINT - 24

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

1  calling HASCO employees, criticizing HASCO for charging $60 application fees at the Ebey

2  Arms apartment, telling HASCO employees they are the reason so many homeless people exist,

3  indicating his intent to file lawsuits related to matters of public concern, including disability

4  discrimination, the First Amendment, and source of income discrimination,  indicating his intent

5  to protest on the public right of way in from of HASCO employee's homes, and freely

6  associating with and communicating with neighbors of HASCO employees.

7

8  83.     Defendant Hansen's official decision to send Plaintiff the January 27, 2025 email caused

9  Plaintiff constitutional injury in the form of retaliating against Plaintiff, substantially motivated

10  by Plaintiff's protected activity under the First Amendment, and causing Plaintiff to become

11  homeless while mentally ill and immune compromised with ulcerative colitis. Mr. Iceberg now

12  lacks access to basic sanitation, and is often forced to defecate in a bucket, and or in public. Mr.

13  Iceberg is now unable to access medical care he was able to previously access when housed, such

14  as procedures which require him to be anesthetized, such as routine colonoscopies, and other

15  medical procedures. Mr. Iceberg is also unable to take many medications he has taken, and might

16  be prescribed, in order to treat his chronic and acute mental health afflictions.

17

18  84.     Defendant Hansen, and HASCO, are well aware that causing Plaintiff to become

19  homeless would severely aggravate Plaintiff's disability, including, but not limited to, causing

20  Plaintiff to experience suicidal ideation. Defendants simply do not care that causing Plaintiff to

21  be chronically homeless may lead Plaintiff to commit suicide.

22

23

SECOND AMENDED COMPLAINT - 25

85.    Defendants' failures to comply with the United States Constitution were actions taken under color of state law and deprived Mr. Iceberg of his federal rights in violation of 42 U.S.C. § 1983.

86.    Defendants' failures to comply with the United States Constitution were taken due to Defendants' deliberate indifference to Plaintiff's constitutional and federal rights. Defendant Hansen is an attorney and is well aware that his acts and omissions as alleged here violate the constitution. He simply does not care. This is very clear from his testimony during the April 4, 2025, informal hearing.

87.    HASCO, and all real defendants, are "persons" and acted under color of state law when they retaliated against Plaintiff for his protected speech..

.

FOURTH CLAIM FOR RELIEF: Fourteenth Amendment - 42 U.S.C. § 1983 - Violation of Procedural Due Process Rights

88.     Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs.

89.    Mr. Iceberg has a protected property intertest in maintaining his housing voucher

SECOND AMENDED COMPLAINT - 26

90.     HASCO failed to give Mr. Iceberg adequate notice, as none of HASCO's notices to Plaintiff contain adequate factual information relating to exactly how Mr. Iceberg violated his "family obligations" and/or CFR.

91.     HASCO failed to allow Mr. Iceberg to cross-examine adverse witnesses at the April 4, 2025, informal hearing, despite Mr. Iceberg repeatedly informing Defendant Hansen that he was entitled to cross-examine adverse witnesses per Goldberg v. Kelly.

92.     HASCO has an admitted pattern, practice, custom, informal, and/or formal policy, of denying section 8 voucher recipients due process with regard to terminating section 8 recipients' vouchers. This is evident by HASCO's admissions and liability in the matter of McIntire v. HASCO, where HASCO completely denied Ms. McIntire the opportunity for any hearing before terminating her voucher, as well as evident by Defendant Hansen's direct testimony during the April 4, 2025, informal hearing, where he claims allowing Mr. Iceberg to cross-examine adverse witnesses would constitute "further harassment"

93.     HASCO'S widespread recurring practice of denying section 8 voucher recipient due process is so permanent and well settled as to constitute formal policy.

94.     Adhering to HASCO's practice of denying section 8 voucher recipient's due process is what caused Defendants to constitutionally injure Plaintiff by denying Plaintiff due process with regard to facts contained with HASCO's termination notices, and ability to cross-examine adverse witnesses at the April 4, 2025, informal hearing. This is similar to how HASCO injured

SECOND AMENDED COMPLAINT - 27

Shawna McIntire by denying her due process by refusing to provide her with any hearing before terminating her voucher. HASCO ultimately had to pay Ms. McIntire $200,000, and reinstate her voucher. HASCO wasted millions of dollars of taxpayer money by violating Ms. McIntire's constitutional rights, and Defendants are more than happy to continue with their practice of ignoring the constitution, including by denying section 8 recipients' due process.

95.     HASCO, and all real defendants, are "persons" and acted under color of state law when they denied Mr. Iceberg's due process rights.

96.     Defendants' failures to comply with the United States Constitution were actions taken under color of state law and deprived Mr. Iceberg of his federal rights in violation of 42 U.S.C. § 1983.

97.     Defendants' failures to comply with the United States Constitution were taken due to Defendants; deliberate indifference to Plaintiff's constitutional and federal rights. Defendant Hansen is an attorney and is well aware that his acts and omissions as alleged here violate the constitution. He simply does not care. This is very clear from his testimony during the April 4, 2025, informal hearing.

FIFTH CLAIM FOR RELIEF: First Amendment - 42 U.S.C. § 1983 – Free Association

98.     Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs.

SECOND AMENDED COMPLAINT - 28

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

99.    Mr. Iceberg has a protected property intertest in maintaining his housing voucher.

100.    Defendant Chad Hansen's started under oath at the April 4, 2025, informal hearing, that Mr. Iceberg voucher was terminated, at least in part, due to Mr. Iceberg contacting a neighbor of Defendant Distelhorst.

101.    HASCO has an admitted pattern, practice, custom, and/or informal policy of terminating section 8 recipient's vouchers as retaliation for section 8 recipients engaging in protected activity under the First Amendment, such as using profanity, threatening to petition and protest, and/or associating with neighbors of HASCO employees freely. This is because the individuals who craft and implement HASCO's policies, including Defendant Hansen, have stated that HASCO's policies and practices preempt the constitution.

102.    HASCO'S widespread recurring practice of terminating section 8 recipient's vouchers to retaliate against section 8 recipients' free association is so permanent and well settled as to constitute formal policy.

103.    Adhering to HASCO's practice of threatening to terminate and/or terminating section 8 voucher recipient's vouchers to chill protected activity under the First Amendment is what caused Defendants to constitutionally injure Plaintiff in the form of retaliating against Plaintiff for his speech by terminating his voucher, substantially, if not entirely, motivated by Plaintiff's

SECOND AMENDED COMPLAINT - 29

1   protected activity under the First Amendment, such as freely associating with and

2   communicating with neighbors of HASCO employees.

3

4   104.    Defendant Hansen is an individual at HASCO with policymaking authority.

5

6   105.    Defendant Hansen made a decision in his official capacity to terminate Plaintiff's section

7   8 voucher via his January 27, 2025 email, in order to retaliate against Plaintiff for his protected

8   activity under the First Amendment, substantially, if not entirely, motivated by Plaintiff's

9   protected activity under the First Amendment, such as freely associating with and

10  communicating with neighbors of HASCO employees for expressive purposes, such as political,

11  religious, or ideological reasons.

12

13  106.    Defendant Hansen's official decision to send Plaintiff the January 27, 2025 email caused

14  Plaintiff constitutional injury in the form of retaliating against Plaintiff for his free association,

15  and causing Plaintiff to become homeless while mentally ill and immune compromised with

16  ulcerative colitis. Mr. Iceberg now lacks access to basic sanitation, and is often forced to defecate

17  in a bucket, and or in public. Mr. Iceberg is now unable to access medical care he was able to

18  previously access when housed, such as procedures which require him to be anesthetized, such as

19  routine colonoscopies, and other medical procedures. Mr. Iceberg is also unable to take many

20  medications he has taken, and might be prescribed, in order to treat his chronic and acute mental

21  health afflictions.

22

23

SECOND AMENDED COMPLAINT - 30

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

107.    Defendant Hansen, and HASCO, are well aware that causing Plaintiff to become homeless would severely aggravate Plaintiff's disability, including, but not limited to, causing Plaintiff to experience suicidal ideation. Defendants simply do not care that causing Plaintiff to be chronically homeless may lead Plaintiff to commit suicide.

108.    Defendants' failures to comply with the United States Constitution were actions taken under color of state law and deprived Mr. Iceberg of his federal rights in violation of 42 U.S.C. § 1983.

109.    Defendants' failures to comply with the United States Constitution were taken due to Defendants' deliberate indifference to Plaintiff's constitutional and federal rights. Defendant Hansen is an attorney and is well aware that his acts and omissions as alleged here violate the constitution. He simply does not care. This is very clear from his testimony during the April 4, 2025, informal hearing.

110.    HASCO, and all real defendants, are "persons" and acted under color of state law when they retaliated against Plaintiff for his free association.

VI.    REQUEST FOR RELIEF

Plaintiff requests the following relief:

SECOND AMENDED COMPLAINT - 31

Scott Iceberg
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

1.      Temporary, preliminary, and permanent injunctive relief reinstating Mr. Iceberg's

section 8 voucher;


 2.      For Mr. Iceberg special damages, including the monetary amount of the loss of his

voucher through the actuarially determined number of years to which he would have been

entitled to receive it, or in the alternative a new voucher and compensation for the lost assistance;

for any other special damages to which he may be entitled;


3.      Compensatory damages against Defendants for 42 U.S.C. §1983 violations;


4.      Punitive damages against Defendants for 42 U.S.C. §1983 violations;


5.      Declaratory relief determining HASCO's policies and actions to be in violation of

federal law, and,


6.      Any other relief to which Plaintiff may be entitled.


DATED this 25th day of May, 2025, at Eastsound, Washington.



Scott Iceberg
Plaintiff
PO BOX 27
Orcas, WA 98280
360-333-2179
scotticeberg@yahoo.com

SECOND AMENDED COMPLAINT - 32